OWEN TIRE COMPANY *vs.* NATIONAL TIRE AND RUBBER COMPANY
& another.

Suffolk.    March 22, 1922. — July 5, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Bills and Notes*, Acceptance, Consideration.  *Contract*, Consideration, Novation.
  *Equity Pleading and Practice*, Issue.  *Equity Jurisdiction*, To reach and
  apply property conveyed in fraud of creditors.

In a suit in equity by one corporation against a second, to reach and apply in
  payment of certain drafts accepted by the defendant assets of the defendant
  alleged to have been conveyed by it in fraud of creditors to a new corpora-
  tion, there was evidence that the plaintiff, which owned all of the shares of
  the principal defendant, made an agreement to sell those shares to an in-
  dividual who agreed personally to pay therefor by shares in the plaintiff and
  also to pay the indebtedness of the principal defendant to the plaintiff in
  shares of a certain value and the balance by giving trade acceptances.  The
  plaintiff presented to the principal defendant on a May 1 and May 3 two
  trade acceptances of $5,000 each which was accepted with the understand-
  ing and agreement that the defendant would be liable only for the amount
  which should be found due to the plaintiff when an accounting between the
  parties should be completed.  There was evidence that at that time the in-
  debtedness of the principal defendant to the plaintiff was slightly less than
  $20,000.  There also was evidence that at that time there was not due from
  the purchaser to the plaintiff $10,000 in addition to the value of stock paid
  or to be paid by him.  The jury were ordered by the judge in answer to
  issues framed to state in substance that the drafts were not accepted for the
  accommodation of the plaintiff and without consideration and that on the days
  when each was accepted there was due to the plaintiff from the defendant
  $5,000.  The jury also answered that the assets of the principal defendant
  were transferred to the other defendant with intent to defraud creditors.
  Upon exceptions by the defendants, it was *held,* that
    (1) On the evidence the jury rightly were ordered to answer that the drafts
  were not accepted by the principal defendant for the accommodation of the
  plaintiff and without consideration;
    (2) The contract between the plaintiff and the purchaser did not purport to
  extinguish the indebtedness of the principal defendant to the plaintiff and
  substitute therefor the obligation of the purchaser;
    (3) The evidence did not tend to prove a novation;
    (4) No question of equitable defence in the nature of payment was open on
  the issues tried;
    (5) The existing indebtedness for which on the evidence the drafts were
  accepted, which was admitted to be in excess of $19,000, was a sufficient
  consideration;

(6) The evidence did not indicate that the drafts were merely for the plaintiff's accommodation;

(7) As the evidence did not require a finding that the plaintiff agreed with the debtor not to call upon it to make payment of the drafts, there was no error in ordering the jury to answer an issue on that subject in the negative;

(8) As the principal defendant conceded the existence of indebtedness to the plaintiff largely in excess of $10,000 on May 1 and May 3, it was not error on the part of the judge to order affirmative answers to issues, whether on those days there was due from the defendant to the plaintiff $10,000.

BILL IN EQUITY, filed in the Superior Court on October 14, 1920, and afterwards amended, by Owen Tire Company, drawer of a trade acceptance, against National Tire and Rubber Company, drawee and acceptor, to reach and apply assets of that defendant alleged to have been conveyed in fraud of creditors to the defendant National Tire and Rubber Co.

Upon motion by the defendants issues were framed for the jury as follows:

"1. Was the draft dated May 1, 1920, accepted by the defendant National Tire and Rubber Company for the accommodation of the plaintiff and without consideration?

"2. Did the plaintiff promise the defendant National Tire and Rubber Company not to call upon it to make payment of the draft dated May 1, 1920?

"3. Was the draft dated May 3, 1920, accepted by the defendant National Tire and Rubber Company for the accommodation of the plaintiff and without consideration?

"4. Did the plaintiff promise the defendant National Tire and Rubber Company not to call upon it to make payment of the draft dated May 3, 1920?

"5. What assets did the National Tire and Rubber Company convey to the defendant National Tire and Rubber Co. on or about August 15, 1920, and what was the value of those assets?

"6. What consideration did the defendant National Tire and Rubber Company receive for the transfer of assets mentioned in Issue No. 5?

"7. After the transfer mentioned in Issue No. 5, what assets remained to the defendant National Tire and Rubber Company?

"8. Was the conveyance mentioned in Issue No. 5 made with intent to hinder, delay and defraud creditors of the defendant National Tire and Rubber Company?

"9. Was there due to the plaintiff from the defendant National Tire and Rubber Company on May 1, 1920, Five Thousand Dollars ($5000.)?

"10. Was there due to the plaintiff from the defendant on May 3, 1920, Five Thousand Dollars ($5000.) in addition to an amount of Five Thousand Dollars ($5000.) due on May 1, 1920?"

These issues were tried before *Keating*, J. Material evidence is described in the opinion.

At the close of the evidence upon request of the plaintiff the jury were ordered by the judge to answer "No" as to the first issue; "No" on the second issue; "No" on the third issue; "No" as to the fourth issue; "Yes" on the ninth issue; and "Yes" to the tenth issue. To the issues numbered 5, 6 and 7 answers were ordered by agreement of counsel. To the issue numbered 8 the jury under appropriate instructions returned the answer "Yes."

The defendants alleged exceptions.

*J. E. Crowley*, for the defendants.

*W. R. Buckminster*, for the plaintiff.

JENNEY, J. The plaintiff was the owner of all the shares issued by the National Tire and Rubber Company, hereinafter designated as the National Company. On May 1, 1920, Abraham Palder agreed with it to buy these shares and pay therefor by the transfer of shares in the plaintiff corporation. The amount of stock required in order to complete the transaction was to be determined by the "net value of the assets" of the National Company less amounts for good will, for organization, and audit expenses.

The value of the assets had not then been ascertained but was to be determined as of the close of business on the previous day. The payment in stock was fixed at $10,000 in par value of the common stock, and two shares of preferred and five shares of common stock for each $100 in net assets. Palder was also to discharge the indebtedness — estimated to be in the neighborhood of $35,000 to $40,000 — of the National Company to the plaintiff, by the transfer of a fixed amount of common and preferred stock to be accepted as of the value of $25,000 and to give trade acceptances for the remainder. The agreement recited: "It is understood that Mr. Palder may desire to turn in additional Preferred stock on the basis similar to that described" in the provision relating to the transfer of stock as of the value of $25,000.

On May 1, 1920, one Wilkinson, who was an employee of the plaintiff and who also kept the books of the National Company, presented to the latter a trade acceptance of that date for $5,000 drawn by the plaintiff upon it. At the time of presentation, Palder did not know the amount of the indebtedness of the National Company to the plaintiff, nor the amount of the net assets of the former and, therefore, could not determine the extent of his obligation under his contract. Wilkinson assured Palder that he would owe considerably more than the amount of the acceptance and that if the indebtedness was less, the amount would be adjusted. Two days later a second acceptance of like form and amount was presented under substantially the same circumstances. Both were accepted by the National Company.

In July following, Palder first ascertained that the net value of the assets of the National Company was $7,776.13 and in addition thereto that there was merchandise in the hands of a subsidiary company to the value of $5,368.09 (which merchandise ultimately came into Palder's possession), and that the indebtedness of that company to the plaintiff was slightly less than $20,000. Wilkinson testified that there was not on May 1 or May 3 $10,000 due to the plaintiff by Palder in addition to the $25,000 paid or to be paid by him in stock.

Palder testified that before the acceptances became due he told the president of the plaintiff corporation that he would transfer additional stock under his contract in lieu of payment in cash for the excess of the indebtedness, and that the president then said to him that it would be necessary to make an arrangement to take such stock as collateral and return the trade acceptances. It could have been found that before the acceptances became due Palder had transferred to the plaintiff stock in the amount required under his agreement and had tendered preferred stock of the par value of $10,000 and common stock of the par value of $5,000, which tender had been refused. Palder, however, did not say anything at the time when the acceptances were made about his intention to avail himself of the option.

The exceptions relate wholly to the action of the judge in directing answers to issues framed for trial by jury. The trial was restricted to such issues. If there were other material facts, they remained open for determination. *Langmaid* v. *Reed*, 159

Mass. 409.  *Dudley* v. *Dudley*, 176 Mass. 34.  *Crocker* v. *Crocker*, 188 Mass. 16, 19.

The first and third issues were alike except as to the dates of the drafts referred to therein and were confined to the question of whether the drafts were accepted by the National Company for the accommodation of the plaintiff and without consideration. On the evidence the jury were rightly directed to answer these in the negative.  The indebtedness of the National Company had not been discharged by the agreement between the plaintiff and Palder, who is not a party to this suit.  The contract did not purport to extinguish the indebtedness of the National Company to the plaintiff and substitute therefor the obligation of Palder. The evidence did not tend to prove a novation.  No question of equitable defence in the nature of payment is open on the issues tried.  See Williston on Contracts, §§ 393, 1857, 1860, 1870.  On the evidence the drafts were accepted on account of the then existing indebtedness, admitted to be in excess of $19,000, of the National Company to the plaintiff.  This was a sufficient consideration.  G. L. c. 107, § 48.  Nothing appears to indicate that they were merely for the plaintiff's accommodation.  G. L. c. 107, § 52.

By direction of the judge, the second and fourth issues were answered in the negative.  In this there was no error.  The evidence did not justify a finding that the plaintiff agreed with its debtor "not to call upon it to make payment" of the drafts.

The remaining exception relates to the affirmative answers by direction of the judge to two issues: one, whether on May 1, 1920, $5,000 was due to the plaintiff from the National Company, and another, whether on May 3, 1920, there was due an additional amount of $5,000.  As that company conceded the existence of an indebtedness largely in excess of these amounts, the answers were properly ordered.

*Exceptions overruled.*